1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SALVADOR ROBERTO TORRES | ) Civil No. 06cv1094 J (BLM) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER:** |
| | ) |
| | ) **(1) GRANTING DEFENDANTS'** |
| | ) **MOTION TO SET ASIDE ENTRY** |
| ESTATE OF STEPHEN RAY HILL, | ) **OF DEFAULT [DOC. NO. 18]; and** |
| GEORGE RAYMOND HILL, individually | ) |
| and as Administrator of the Estate of | ) **(2) DENYING PLAINTIFF'S** |
| Stephen Ray Hill, DAVID HILL, | ) **MOTION FOR DEFAULT** |
| NATIONAL BRAKE SERVICE, INC., | ) **JUDGMENT [DOC. NO. 12].** |
| and DOES 1 through 10, inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Before the Court is Defendants Estate of Stephen Ray Hill, George Raymond Hill, David W. Hill, and National Brake Service, Inc.'s ("Defendants") Motion to Set Aside Entry of Default. [Doc. No. 18.] Plaintiff Salvador Roberto Torres ("Plaintiff") opposes Defendants' Motion to Set Aside Entry of Default. [Doc. No. 26.] In addition, Plaintiff has filed a Motion for Default Judgment. [Doc. No. 12.] The issues presented herein are decided without oral argument. *See* S.D. Cal. Civ. R. 7.1.d.1 (2006). For the reasons stated below, the Court **GRANTS** Defendants' Motion to Set Aside Entry of Default and **DENIES** Plaintiff's Motion for Default Judgment.

*Procedural Background*

On May 19, 2006, Plaintiff filed a Complaint alleging that Defendants violated his rights of artistic integrity under the Visual Artists Rights Act of 1990. (Compl. ¶ 1.) On August 11, 2006, the Court's Clerk entered default against Defendants. [Doc. No. 10.] On October 25, 2006, Plaintiff filed and served a Motion for Default Judgment against Defendants, and the Court ordered supplemental briefing on this Motion. [Doc. Nos. 12, 13.] In response, Plaintiff filed a supplemental brief. [Doc. No. 14.] Before the Court ruled on Plaintiff's Motion for Default Judgment, Defendants filed a Motion to Set Aside Entry of Default on January 10, 2007. [Doc. No. 17.] On February 20, 2007, Plaintiff filed an Opposition to Plaintiff's Motion to Set Aside Default. [Doc. No. 26.] On February 26, 2007, Defendants filed a Reply. [Doc. No. 28.]

*Factual Background*

This matter arises out of the alleged defacement of a mural Plaintiff painted on the side of a building owned by Defendant Estate of Stephen R. Hill ("Estate"). (*See* Defs.' Mot. at 1; Compl. ¶ 3.) The mural was painted with Defendants' permission. (David W. Hill Decl. ¶ 12.) Defendant National Brake Service's business is located in the building. (Defs.' Mot. at 1.) The remaining Defendants are named in their capacity as having an interest in the property as either heirs of the Estate or as the administrator thereof. (*Id.*)

Stephen Ray Hill, owner of the property on which the mural at issue was painted, died in May 2005. (David W. Hill Decl. ¶ 4.) Defendants hired attorney Linda Wesson Greenberg, who is also a real estate broker, to handle the probate proceedings. (*Id.*) Defendant David W. Hill states that Stephen Ray Hill had "given Ms. Greenberg the listing for the property" before his death. (*Id.* ¶ 5.) After Stephen Ray Hill's death, however, Defendants contacted Ms. Greenberg and told her that they no longer wanted to sell the property. (*Id.*) Ms. Greenberg told Defendants that she had turned over the listing to her brother, Vann Wesson, who is also a real estate broker. (*Id.*) According to Defendants, Ms. Greenberg stated that they had to sell the property, or they would be sued by the investors who had agreed to buy it. (*Id.*) On June 18, 2005, the mural was painted over, apparently at Mr. Wesson's direction. (*See id.* ¶ 11; Pl.'s Opp'n to

1    Defs.' Mot. at 3.)  Defendants assert that they took no part in painting over the mural.  (David

2    W. Hill Decl. ¶ 11.)

3           Defendants eventually discovered that Ms. Greenberg had made arrangements to sell the

4    property to her brother, Mr. Wesson.  (*Id.* ¶¶ 8-9.)  In October 2005, they retained attorney Bruce

5    Sulzner to investigate the manner in which Ms. Greenberg was handling the Estate.  (*Id.* ¶¶ 1, 8-

6    9.)  Mr. Sulzner advised Defendants that because Ms. Greenberg had made arrangements to sell

7    the property to her brother, there was a possibility that she had a conflict of interest as their

8    counsel, and they should consult another probate attorney.[1]  (*See id.* ¶ 9.)  Because he did not

9    practice probate law, Mr. Sulzner referred Defendants to probate attorney Bradley Nemeth, and

10   Mr. Nemeth agreed to represent Defendants in matters relating to the Estate.  (*Id.*)  Thereafter,

11   Mr. Wesson filed a motion to compel the Estate to sell the property to him.  (*Id.* ¶ 10.)

12          On December 12, 2005, Pablo Manga, counsel for Plaintiff, sent Mr. Nemeth a demand

13   letter setting forth the details of Plaintiff's Visual Artists Rights Act claim and requesting a

14   response from Mr. Nemeth.  (Manga Decl. ¶ 2.)  Mr. Nemeth never responded to this letter.  (*Id.*)

15   Mr. Manga sent Mr. Nemeth a second letter on January 10, 2006, and Mr. Nemeth again did not

16   respond.  (*Id.* ¶ 3.)  On January 20, 2006, Mr. Manga called Mr. Nemeth to discuss Plaintiff's

17   claim.  (*Id.* ¶ 5.)  Mr. Manga states that it appeared that Mr. Nemeth had not investigated

18   Plaintiff's claim, and Mr. Nemeth suggested that Plaintiff should file a claim against Defendants.

19   (*Id.*)

20          On May 19, 2006, Plaintiff filed his Complaint. [Doc. No. 1.]  On June 14, 2006,

21   declarations of service were executed by Plaintiff's process server as to Defendants Estate,

22   David W. Hill, National Brake Service, and George Raymond Hill.[2]  [Doc. Nos. 4, 5, 6, 7.]

23   Shortly thereafter, Defendant David W. Hill contacted Mr. Sulzner to inform him that he had

24   been served with a lawsuit, and he sent Mr. Sulzner a copy of the Complaint.  (Sulzner Decl. ¶

25

26          [1] Mr. Sulzner later assisted Defendants in preparing complaints against Ms. Greenberg with the
     California Bar Association and the Department of Real Estate.  (*See* David W. Hill Decl. ¶ 10.)

27
            [2] The declaration signed by the process server indicates that Defendant George Raymond Hill,
28   the administrator of the Estate, accepted service on behalf of Defendant Estate and on behalf of
     Defendant National Brake Service.

14.)  Mr. Sulzner then contacted Mr. Nemeth.  (*Id.*)  According to Mr. Sulzner, Mr. Nemeth advised him that he had contacted Plaintiff's counsel and proposed that Plaintiff's suit be joined with the pending probate action involving the Estate.  (*Id.* ¶ 15.)  The Court notes, however, that Plaintiff's counsel categorically denies that Mr. Nemeth contacted him and proposed that the two actions be joined.  (*See* Pl.'s Opp'n to Defs.' Mot. at 16 n.2.)

Mr. Sulzner also asserts that Mr. Nemeth told him that it was likely that Plaintiff's action would be barred because it had been filed too late in relation to the probate proceedings. (Sulzner Decl. ¶ 16.)  Mr. Sulzner then advised Defendants not to worry about the suit because Mr. Nemeth was handling it.  (*Id.*)  Mr. Sulzner states that he contacted Mr. Nemeth periodically to inquire whether Plaintiff had agreed to join his claim in the probate action.  (*Id.* ¶ 18.) According to Mr. Sulzner, Mr. Nemeth stated that he still had not heard from Plaintiff's attorney. (*Id.*)  Mr. Sulzner passed this information on to Defendants.  (*See id.*; David W. Hill Decl. ¶¶ 12-13.)

On August 11, 2006, the Court's Clerk entered default against Defendants after they failed to file a responsive pleading.  [Doc. No. 10.]  The Court's Clerk sent Mr. Nemeth notice of the entry of default against Defendants.  [*See* Doc. No. 11.]  On August 14, 2006, Mr. Manga also mailed Mr. Nemeth notice of the entry of default and informed him that if Defendants did not file a motion to set aside the entry of default, then Plaintiff would file a Motion for Default Judgment.  (Manga Decl. ¶ 15.)  Mr. Nemeth never responded to this letter.  (*Id.*)  On October 25, 2006, Plaintiff filed a Motion for Default Judgment.  [Doc. No. 12.]  Plaintiff served the Motion for Default Judgment on Mr. Nemeth.  (Mot. for Default J. Ex. E.)

Mr. Sulzner asserts that he and Defendants heard nothing about the developments in the case, including the entry of default and Plaintiff's Motion for Default Judgment, until November 6, 2006.  (Sulzner Decl. ¶¶ 18-24.)  On that date, Defendant David W. Hill received a letter from Plaintiff's attorney stating that "Plaintiff's Motion for Final Default Judgment is currently pending before the Court and will be heard on December 18, 2006 at 10:30 a.m."[3]  (*Id.* Ex. 5.)

---

[3] The Court later took the matter under submission, and no appearances were required on December 18, 2006. [Doc. No. 15.]

Because Mr. Hill was unaware that a hearing had been scheduled, he called Mr. Sulzner "to find out if I had missed something." (David W. Hill Decl. ¶ 18.) Mr. Sulzner was also unaware of the hearing, and he attempted to contact Mr. Nemeth's office, but was unable to speak with him because he had left work due to illness. (Sulzner Decl. ¶ 26.) Mr. Sulzner states that throughout the rest of November, he had difficulty contacting Mr. Nemeth regarding the status of the default because Mr. Nemeth had become very ill and was not at his office. (*Id.* ¶¶ 26-33.) Mr. Sulzner states that when he eventually reached Mr. Nemeth in late November, Mr. Nemeth confirmed that he had been very ill. (*Id.* ¶ 30.) According to Mr. Sulzner, Mr. Nemeth stated that he had retained an attorney with experience in federal court matters to look over the default issue, and that he would have more information shortly. (*Id.*) Mr. Sulzner asserts that in early December, he had heard nothing further from Mr. Nemeth, and he attempted to contact him again, but Mr. Nemeth remained ill and was not at work. (*Id.* ¶ 31.) On December 18, 2006, Mr. Sulzner received a call from Mr. Nemeth's paralegal stating that Mr. Nemeth had suffered what appeared to be a heart attack and had been hospitalized. (*Id.* ¶ 33.) That same day, Mr. Sulzner contacted Plaintiff's attorney and attempted to persuade Plaintiff's counsel to stipulate to setting aside the default, but the parties were unable to reach an agreement. (*Id.* ¶¶ 39-40.) On January 10, 2007, Mr. Sulzner filed the instant Motion to Set Aside Entry of Default on behalf of Defendants. [Doc. No. 18.]

### *Legal Standard*

Setting aside an entry of default is governed by Federal Rule of Civil Procedure 55(c), which provides that a default may be set aside for "good cause." *See* Fed. R. Civ. P. 55(c). "Good cause" to set aside an entry of default under Rule 55(c) is a lighter burden than that required under Federal Rule of Civil Procedure 60(b) when a party seeks to set aside a default judgment already entered. *See Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945-46 (9th Cir. 1986); *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) ("[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b)."). A "good cause" determination requires the application of a three-factor test: "[A] district court may deny a

1    motion to vacate a default judgment if: (1) the plaintiff would be prejudiced if the [entry of

2    default] is set aside, (2) defendant has no meritorious defense, or (3) the defendant's culpable

3    conduct led to the default." *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104,

4    1108 (9th Cir. 2000) (quotations and citation omitted). A district court is free to deny the motion

5    if any of the three factors is true. *Id.*

6          In general, motions to set aside default should be liberally granted and are left to the

7    discretion of the court. *See Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). "[J]udgment by

8    default is a drastic step appropriate only in extreme circumstances; a case should, whenever

9    possible, be decided on the merits." *Id.* Any doubt should be resolved in favor of setting aside

10    the default in order to decide a case on its merits. *Schwab v. Bullock's, Inc.*, 508 F.2d 353, 355

11    (9th Cir. 1974).

12                    ***Discussion***

13          To determine whether Defendants' Motion to Set Aside Entry of Default should be

14    granted, this Court must examine three factors: (1) whether Plaintiff would be prejudiced if the

15    entry of default is set aside, (2) whether Defendants have a meritorious defense, and (3) whether

16    Defendants' culpable conduct led to the default. *See Hayhurst*, 227 F.3d at 1108.

17    **A. Prejudice to Plaintiff**

18          The Court first examines whether Plaintiff would be prejudiced if the entry of default is

19    set aside. Defendants argue that delay alone does not constitute prejudice, and that Plaintiff

20    cannot demonstrate any prejudice other than a delay of several months. (Defs.' Mot. at 6.) In

21    opposition, Plaintiff argues that Defendants' destruction of the mural has resulted in damage to

22    his reputation as an artist. (Opp'n to Defs.' Mot. at 16.) According to Plaintiff, "[t]he longer the

23    damage goes unremedied, the more his reputation as an artist suffers." (*Id.*)

24          Delay alone is not a sufficient basis for establishing prejudice for purposes of opposing a

25    motion to set aside entry of default. *See TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691,

26    695 (9th Cir. 2001); *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990); *Davis v. Musler*, 713

27    F.2d 907, 916 (2d Cir. 1983); *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656-57 (3d Cir.

28    1982). The standard in determining prejudice is whether the plaintiff's ability to pursue his claim

1    will be hindered if the entry of default is set aside.  *See Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.

2    1984).  If a delay will result in "tangible harm such as loss of evidence, increased difficulties of

3    discovery, or greater opportunity for fraud or collusion", the delay is considered prejudicial.

4    *Knoebber*, 244 F.3d at 701 (citing *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433-34

5    (6th Cir. 1996)).

6         Plaintiff has failed to establish that setting aside the entry of default would result in

7    tangible harm affecting his ability to pursue his claim.  Plaintiff does not assert that Defendants'

8    delay resulted in loss of evidence.  Nor does Plaintiff argue that Defendants' delay will make

9    discovery more difficult, or that his ability to recover on any eventual judgment or remedy has

10   been thwarted.  If it is the case that the alleged harm to Plaintiff's reputation has been exacer-

11   bated by Defendants' delay, Plaintiff will have ample opportunity to seek compensation for the

12   additional harm as the case progresses.  Accordingly, the Court **FINDS** that Plaintiff has failed

13   to demonstrate that he will be prejudiced if the entry of default is set aside.

14        **B. Meritorious Defense**

15        The Court next examines whether Defendants have set forth a meritorious defense.

16   Defendants argue that they are not liable for the destruction of Plaintiff's mural because their

17   former attorney and her brother directed that the mural be covered with paint.  (Defs.' Mot. at 6.)

18   Defendants also argue that Plaintiff's claim "may be barred by the Probate Code." (*Id.*)  In

19   opposition, Plaintiff argues that his claims are not barred by the Probate Code because his claims

20   "are not 'creditor's claims' against a decedent, but instead are claims that arose after the

21   decedent building-owner's death." (Pl.'s Opp'n to Defs.' Mot. at 13.)  Plaintiff also argues that

22   the Probate Court has no jurisdiction to hear claims arising under the Visual Artists Rights Act.

23   (*Id.* at 15.)  Finally, Plaintiff asserts that an executor is personally liable for any torts committed

24   by him or his agents in the course of administering an estate.  (*Id.*)

25        In considering whether a defendant has a meritorious defense, a court must determine

26   "whether there is some possibility that the outcome of the suit after a full trial will be contrary to

27   the result achieved by the default." *Hawaii Carpenters Trust Funds v. Stone*, 794 F.2d 508, 513

28   (9th Cir. 1986).  Because the preferred disposition of any case is upon the merits, the showing of

a meritorious defense does not involve a heavy burden of proof. *Tri-Continental Leasing Corp., Inc. v. Zimmerman*, 485 F. Supp. 495, 497 (N.D. Cal. 1980). Thus, a party seeking to set aside a default need not prove his defense by a preponderance of the evidence. *Id.* Rather, the defaulting party must only produce evidence that establishes a factual or legal basis for the tendered defense. *Id.* In other words, the defaulting party must set forth a defense "which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994).

Defendants have not set forth a meritorious defense as to their claim that the Probate Code bars Plaintiff's action. Defendants fail to cite any provision of the Probate Code in support of their defense. Defendants do not set forth the statute of limitations period for claims against an estate, nor do they set forth facts indicating when the statute of limitations began to run. Nor do they indicate when the statute of limitations expired. Defendants thus have failed to produce competent evidence that establishes the factual or legal basis for their Probate Code defense.

However, Defendants have set forth a meritorious defense as to their claim that they did not participate in the mural's destruction. Defendants have provided declarations stating that they did not paint over the mural. (*See* David W. Hill Decl. ¶¶ 11, 14; George R. Hill. Decl. ¶¶ 9-10.) Defendants also have provided declarations stating that they opposed the sale of the property to Mr. Wesson, the party who allegedly ordered the mural's destruction. (*See* David W. Hill Decl. ¶¶ 5-6; George R. Hill. Decl.¶¶ 5-6.) There is no evidence in the record indicating that Mr. Wesson was Defendants' agent or was acting with their authorization when he allegedly ordered the mural to be covered. Defendants thus have set forth a factual basis for their defense that they did not destroy the mural. Because there is "some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default," the Court **FINDS** that Defendants have set forth a meritorious defense. *See Stone*, 794 F.2d at 513.

### C. Culpable Conduct

The Court next examines whether Defendants' culpable conduct led to the entry of default. Defendants assert that they were not culpable because they "had no idea that the

1   required pleadings had not been filed or that a default had been taken." (Defs.' Mot. at 4.)

2   Defendants assert that they believed their probate attorney, Mr. Nemeth, was working with

3   Plaintiff's counsel to combine Plaintiff's claim with other claims against the Estate. (*Id.*)

4   Defendants state that as soon as they discovered that default had been entered, they immediately

5   consulted Mr. Sulzner, who attempted to negotiate a stipulation with Plaintiff to set aside the

6   entry of default. (*Id.*) In opposition, Plaintiff points out that each Defendant received personal

7   service of the Summons and Complaint on June 14, 2006, well before the Clerk's entry of

8   default on August 11, 2006. (*See* Pl.'s Opp'n to Defs.' Mot. at 9.) Plaintiff asserts that Mr.

9   Nemeth refused to respond to correspondence from Plaintiff's counsel stating that Plaintiff

10  would seek default judgment if Defendants did not respond to the Complaint. (*Id.*) Plaintiff

11  argues that Defendants' conduct was intentional because they did not seek an extension of time

12  to file an Answer, did not enter into good faith negotiations regarding Plaintiff's claim, and did

13  not initiate any contact with Plaintiff until the Court took Plaintiff's Motion for Default

14  Judgment under submission in December 2006. (*Id.* at 10.)

15         Because default judgments are generally disfavored, the Ninth Circuit has narrowly

16  defined conduct that will qualify as culpable. *See TCI Group Life Ins. Plan v. Knoebber*, 244

17  F.3d 691, 697 (9th Cir. 2001). To amount to culpable, a defendant's conduct must be " ' willful,

18  deliberate, or evidence of bad faith.' " *Id.* (quoting *Am. Alliance Inc. v. Eagle Ins. Co.*, 92 F.3d

19  57, 61 (2d Cir. 1996)). "Neglectful failure to answer as to which the defendant offers a credible,

20  good faith explanation negating any intention to take advantage of the opposing party, interfere

21  with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional' under

22  our default cases, and is therefore not . . . culpable or inexcusable." *See id.* at 697-98. Addition-

23  ally, the Ninth Circuit has held that where an attorney engages in grossly negligent or egregious

24  conduct that results in default, that default may be set aside. *See Community Dental Servs. v.*

25  *Tani*, 282 F.3d 1164, 1170 (9th Cir. 2002).[4]

26

27         [4] The Court recognizes that *Tani* dealt with a defendant's motion to set aside default judgment, rather than a motion to set aside entry of default, as presented in the instant case. *See* 282 F.3d at 1168.

28  However, when ruling on a motion to set aside entry of default, district courts are permitted to consider and liberally interpret the standards for granting relief from a default judgment. *See Hawaii Carpenters'*

1    In *Tani*, the defendant's attorney ignored court orders, neglected motions, missed

2 hearings and other court appearances, failed to file pleadings or serve them on opposing counsel,

3 and otherwise "virtually abandoned his client by failing to proceed with his client's defense,"

4 comprehensively amounting to "the client's receiving practically no representation at all." *Id.* at

5 1170-71.  The situation was exacerbated because the attorney repeatedly represented to the

6 defendant that he was performing his responsibilities. *Id.* at 1171.  The Ninth Circuit set aside

7 the default judgment against the defendant because his attorney's conduct "depriv[ed] him of the

8 opportunity to take action to preserve his rights." *Id.*

9    Like the attorney in *Tani*, Defendants' probate attorney, Mr. Nemeth, made numerous

10 errors while handling Defendants' case, and he assured Defendants' other attorney, Mr. Sulzner,

11 that the case was proceeding as planned.  Before Plaintiff's action was filed, Mr. Nemeth failed

12 to respond to several letters and phone calls from Plaintiff requesting that the parties discuss

13 Plaintiff's claims.  (*See* Manga Decl. ¶¶ 2-5.)  Once the Complaint was filed, Mr. Nemeth did

14 not file a responsive pleading, even though he assured Mr. Sulzner that Plaintiff's suit likely

15 would be barred by the Probate Code.  (*See* Sulzner Decl. ¶ 16.)  Although Mr. Nemeth told Mr.

16 Sulzner that he was waiting for Plaintiff to decide whether he wanted to join his suit with the

17 pending probate proceedings, Plaintiff categorically denies that Mr. Nemeth ever suggested that

18 the two actions be joined.  (*See id.* ¶ 15; Pl.'s Opp'n to Defs.' Mot. at 16 n.2.)  Despite the fact

19 that Mr. Nemeth received notice of both the Clerk's entry of default and Plaintiff's Motion for

20 Default Judgment, he never informed Defendants of these developments.  (*See* David W. Hill

21 Decl. ¶ 21.)  After the Clerk of the Court entered default, Plaintiff sent Mr. Nemeth a letter

22 notifying him that Plaintiff would file a Motion for Default Judgment if Defendants did not file a

23 motion to set aside the default.  (Manga Decl. ¶ 15.)  However, Mr. Nemeth never responded to

24 this letter.  (*Id.*)  Nor did he file a motion to set aside the entry of default, even though he told

25 Mr. Sulzner that he had retained an attorney with experience in federal court matters to look over

26 the default issue.  (*See* Sulzner Decl. ¶ 30.)  Viewed in light of the totality of the circumstances,

27

28 *Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).  The Court thus is permitted to consider
whether Defendants' counsel was grossly negligent as part of its analysis of the instant Motion.

1   Mr. Nemeth's conduct appears to be at least as negligent as that of the defendant's attorney in

2   *Tani*.  Mr. Nemeth's failure to respond to Plaintiff's correspondence or to file any document in

3   this case suggests that he "virtually abandoned his client by failing to proceed with his client's

4   defense." *See Tani*, 282 F.3d at 1170-71.  His deficient representation of Defendants was

5   worsened by the fact that he failed to apprise Defendants of the developments in the case and

6   represented that he was performing his responsibilities, thereby "depriving [Defendants] of the

7   opportunity to take action to preserve [their] rights."  *See id.* at 1171.  Because the facts indicate

8   that Defendants' failure to file a responsive pleading resulted from counsel's grossly negligent

9   conduct, the Court **FINDS** that Defendants' conduct was not culpable.  *See id.* at 1169

10   ("[W]here the client has demonstrated gross negligence on the part of his counsel, a default

11   judgment against the client may be set aside.").

12          Even if Mr. Nemeth's conduct did not rise to the level of gross negligence, Defendants

13   have set forth facts demonstrating that their failure to file a responsive pleading was not

14   deliberate or willful.  Defendants relied on the representations of Mr. Sulzner and Mr. Nemeth

15   that Plaintiff's Complaint was being addressed.  (*See* David W. Hill Decl. ¶ 12.)  Mr. Nemeth

16   never informed Defendants that default had been entered against them or that Plaintiff had filed

17   a Motion for Default Judgment, and this deprived Defendants of the opportunity to take action to

18   preserve their rights until they learned of the entry of default in November 2006.  (*See id.* ¶ 20.)

19   Once Defendants learned from Plaintiff's counsel that default had been entered, they immedi-

20   ately contacted Mr. Sulzner for advice.  (*See id.* ¶ 18.)  Mr. Sulzner attempted to negotiate with

21   Plaintiff's counsel to set aside the default, and when his attempt was unsuccessful, he filed the

22   instant Motion to Set Aside Entry of Default.  (*See* Sulzner Decl. ¶¶ 39-49.)  The facts submitted

23   by Defendants support their explanation that they failed to respond to Plaintiff's Complaint

24   because they thought that Mr. Nemeth was negotiating with Plaintiff and that he had filed the

25   required pleadings.  The Court thus **FINDS** no indication that Defendants intentionally failed to

26   answer or that they sought to manipulate the legal process.

27

28

06cv1094 J (BLM)

In sum, all three of the factors used to determine whether an entry of default should be set aside weigh in Defendants' favor.  Accordingly, the Court **GRANTS** Defendants' Motion to Set Aside Entry of Default.

### *Conclusion*

For the reasons set forth above, the Court **GRANTS** Defendants' Motion to Set Aside Entry of Default [Doc. No. 18], and the Court **GRANTS** Defendants leave to file their answer within ten days of the date stamped "Filed" on this Order.  Plaintiff's Motion for Default Judgment [Doc. No. 12] is **DENIED.**

**IT IS SO ORDERED.**

DATED:  April 18, 2007

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc:   All Counsel of Record
       Bruce Sulzner
       Magistrate Judge Major

12

06cv1094 J (BLM)